CHARLES J. JOHNSON, Appellee, v. CITY OF DENISON et al., Appellants.

**APPEAL AND ERROR: Review—Who May Allege Error—Requested**
1 **Instructions—Non-Waiver of Ruling on Motion to Direct Verdict.** The *defendant* is not precluded by his request for instructions on submission of the cause to the jury from predicating error upon the refusal of the court to sustain his motion for a directed verdict.

**MUNICIPAL CORPORATIONS: Streets and Alleys—Negligence—**
2 **Sufficiency of Evidence—Unguarded Ditch.** Evidence reviewed, and *held* that, where plaintiff's bull, which was being driven along the street, fell into an open and unguarded ditch, which had been excavated for a sewer, the question whether the defendant was negligent was for the jury.

**MUNICIPAL CORPORATIONS: Streets and Alleys—Negligence—**
3 **Proximate Cause—Excavation on Streets.** Where plaintiff's bull, which was being driven along the street, stepped upon a scraper, and slipped into an open excavation left unguarded in a street open for travel, *held* that the proximate cause of the injury was the unguarded excavation.

**ANIMALS: Damages from Injuries—Contributory Negligence.** Evi-
4 dence reviewed, and *held* that the plaintiff, whose bull was injured by falling into an open excavation on a public street, was not guilty of contributory negligence, as a matter of law, under Sec. 2314, Code, 1897, declaring that stock shall not be considered as running at large, so long as it is under the immediate and efficient control of the owner, upon the public roads for travel.

**TRIAL: Requested Instructions — Special Interrogatories — Ulti-**
5 mately Determinative Facts. To require the submission of special interrogatories, they must involve some question which, answered affirmatively or negatively, is determinative of some ultimate fact involved in the right to recover.

NEW TRIAL: Newly Discovered Evidence—Cumulative Evidence.
6  A new trial will not be granted on the ground of newly dis-
   covered evidence which is purely cumulative.

*Appeal from Crawford District Court.*—E. G. ALBERT,
Judge.

JULY 7, 1919.

ACTION to recover damages alleged to have been caused
by the falling of the plaintiff's bull into an open ditch, left
by the defendants on its streets, unguarded. Verdict and
judgment for the plaintiff. Defendants appeal.—*Affirmed.*

*Conner & Powers* and *T. V. Walker,* for appellants.

*Salinger & Welch,* for appellee.

GAYNOR, J.—This action was brought to recover the
value of a bull, that came to its death through falling into
a sewer ditch in the process of construction in the city of
Denison.

On the 14th day of December, 1914, the plaintiff was
driving the bull, with certain females of his kind, from a
point somewhere east of Denison to a point in Denison, to
be delivered at the Northwestern Railroad Stockyards, locat-
ed in the southwestern portion of the city. The plaintiff
started with these cattle early in the morning, from his
home three or four miles east of Denison, and entered the
streets of Denison somewhere about 11 o'clock on that day.
On entering the city, he passed onto what is known as Rail-
road Avenue. This street runs east and west, and the plain-
tiff was proceeding westward along the street, at the time
of the accident. The cows were brought simply as com-
panions to the bull, so that, by their presence, he might be
induced to conduct himself in a more genteel manner than
could reasonably be expected of him if brought in alone.
Accompanying these animals were plaintiff, riding in a

buggy, a son of plaintiff's, and a hired man.  These two rode horses, and followed the animals for the purpose of controlling and directing their movements.

It appears that, before reaching the city, the bull frequently became unruly, escaped from the control of his drivers, and ran from the road into pastures and fields and over fences, pursued by the riders, who, after some considerable effort, drove him back into the road.  It appears that he was making vigorous efforts to return to his home.  The drivers wanted him to go one way, and he wanted to go the other.  By reason of this, the cows were somewhat in the lead, when they reached the city.  The testimony tends to show, however; that, after they had succeeded in turning him back into the road, he gave up his efforts to return home, and proceeded gently and kindly to where the cows were.  They were then about three blocks from where the accident occurred.  The defendant was putting in a sewer in this avenue.  The work had progressed somewhat, and some excavations had been made and filled, but some excavations were left unfilled.  Defendants stopped work on the excavation on the 11th, and did not start again until the 16th.  It was between these two dates that the plaintiff, with his cattle, came upon this street.  The defendants had barriers partially across the street, about two feet east of the unfilled portion of the ditch.  The barrier consisted of a board laid upon tiles, one tile on each side, with a board resting on the top of each.  The bull, at the time he was injured, had passed beyond this guard, and was on one side of the open ditch.  The cows were on the other side.  He attempted to cross over to where the cows were, slipped, and lost his balance, and was thrown into the ditch.  This excavation in the street was near the center of the street.  On each side of the ditch, a passageway was left for travelers.  Only the ends of the ditch were guarded.  There were no guards on the side of the ditch, except such as had been

made by the excavated dirt. The evidence tends to show that, at the time plaintiff and his helpers approached this excavation, the guards could be plainly seen, and the ditch was plainly observable. It was in an attempt to cross the ditch and join his companions that the bull slipped and fell into the ditch. The son, who was driving the bull, testified that the bull was probably a rod or ten feet from him, when he started to go across; that he turned to cross of his own volition. One of the helpers was, at the time, immediately behind him, and crowding him. The evidence tends to show that the scraper, on which it is claimed the bull stepped, and from which he slipped into the ditch, was about two feet west of the east plank that guarded the ditch. The scraper covered the point at which the last filling was made. To the west, the ditch was open.

The plaintiff charges as negligence that the ditch was carelessly and negligently left open and unfilled, without proper barrier or guards to warn and protect the traveling public against its dangerous character and condition.

Upon the fact of negligence, the defendants joined issue with the plaintiff, and the cause was tried to a jury, and a verdict returned for the plaintiff for $110. Upon this verdict, judgment was entered, and the defendants appeal, assigning error prejudicial to their rights occurring upon the trial. We will not consider these errors in the order of their assignment, nor will we subdivide them as presented by appellants in argument.

The first error relied upon for reversal is predicated upon the refusal of the court to sustain defendants' motion for a directed verdict, made at the close of the evidence. This motion, though subdivided into seventeen parts, really presents for consideration but three questions:

(1)    That the evidence does not affirmatively show any negligence on the part of the defendant.

(2)   That, if any negligence is shown on the part of the defendant, the evidence conclusively shows that the negligence complained of was not the proximate cause of the injury.

(3)   That the plaintiff was guilty of contributory negligence, in that said bull was allowed to come upon the streets of the city without being properly restrained by the plaintiff; that, prior to plaintiff's arrival upon the streets, he discovered the unmanageable character of the bull and that the bull was beyond his control; and that he was, therefore, negligent in permitting him to come upon the streets uncontrolled and unrestrained, with notice and knowledge of the danger so exposed.

Upon this, we have to say that there is some conflict in the evidence touching the character of the bull and the manner of its handling.   The evidence tended to show that, after the bull got upon the street and was headed westward on the street, and just before and at the time of the accident, he was proceeding leisurely along the street, in a quiet and orderly manner.   It may possibly seem that this sudden change of disposition in the bull at this particular time, this sudden change in his demeanor, were not such as one would reasonably expect in an excited bull, driven under the lash for three or four miles; yet the jury could, if they believed the testimony of plaintiff's witnesses, find that, at the time of the accident, and immediately prior to the accident, he had submitted himself to the control and management of his drivers, and was proceeding in the direction they desired him to go.   There is some dispute in the testimony as to this bull's conduct, as he came down Railroad Avenue to the point where the accident occurred.   It seems to tax the credulity of defendants to believe that he could then be in a perfectly composed frame of mind.   We feel justified in saying that, as an original proposition, we might differ with the jury in its finding that he had surrendered

himself fully to the control of his drivers; but that was a question for the jury. The testimony is that he had composed himself, was under the control of his drivers, proceeding along the side of the track open for travel, when he suddenly concluded to visit his friends on the other side.

We do not think the defendants are precluded, by what subsequently transpired, from predicating error upon the refusal of the court to sustain their motion for a directed verdict, and we do not find any case that

1. APPEAL AND ER-
ROR: review:
who may allege
error: re-
quested in-
structions:
non-waiver of
ruling on mo-
tion to direct
verdict.

directly so holds. The last expression of the court touching this proposition is found in *Hanley v. Fidelity & Cas. Co.*, 180 Iowa 805, 819. By submitting the motion and having an adverse ruling, defendants did not waive their right to have the case submitted to the jury, under proper instructions. They did not waive any error committed by the court in its ruling upon the motion for a directed verdict. They had no other recourse. They were forced by the action of the court in overruling the motion to make at least some effort to protect themselves against further evil consequences at the hands of the jury. They had no choice, after the ruling of the court. The case must then go to the jury, and they were entitled to have it go under proper instructions, without waiving the error, if any, committed by the court in overruling the motion. If the motion was good, and the court should have sustained it, then the court committed error in overruling it, error prejudicial to the defendants. Of this error, the defendants are now in a position to complain, and no action of the court and no action of the jury could cure the error. If, under the evidence, the ruling was wrong, it is still wrong. If defendants were entitled to life preservers, their right was not lost by afterwards grappling at straws. We think there is no rule established by this court that precludes a review of the action of the lower

court in overruling a motion for a directed verdict, simply because the defendant asked that the court, in submitting the case, submit it upon proper instructions, or because he prepared and asked instructions to be given to the jury, presenting fairly to them law as it is: this, even though the instructions were prepared by defendant that were given by the court. We think, however, that the motion was rightly overruled.

There was a question for the jury as to whether or not plaintiff was entitled to recover in this case. We might not agree with the jury's finding upon this fact, but we do say that reasonable minds might differ, touching the matters raised by the motion, and might differ as to whether or not the plaintiff had shown facts sufficient to justify a recovery.

2. MUNICIPAL
CORPORATIONS:
streets and al-
leys: negli-
gence: suffi-
ciency of evi-
dence: un-
guarded ditch.

The next proposition is that the negligence charged is not shown to be the proximate cause of the injury.

The negligence which it is alleged was the proximate cause of the injury was the open excavation, left unguarded in a public street open for travel. The leaving of the scraper at the point where it was, the stepping upon the scraper, and the slipping of the bull, were not independent, intervening causes of injury, in and of themselves. They were only incidents in the chain of causation, and not the proximate cause of the injury.

3. MUNICIPAL
CORPORATIONS:
streets and al-
leys: negli-
gence: proxi-
mate cause:
excavation on
streets.

Third, Was the plaintiff guilty of contributory negligence?

Reliance is had upon Section 2314 of the Code of 1897 on this point. This section, so far as material to this con-

troversy, reads:

**4. ANIMALS: damages from injuries: contributory negligence.**        "Swine, sheep and goats at all times, and, during the time and as required by a police regulation adopted according to law, stock shall be restrained from running at large. Animals thus prohibited from running at large, when trespassing on land, or a road adjoining thereto, may be distrained by the owner of such land, and held for damages done by them, and for the costs provided in this chapter; but stock shall not be considered as running at large so long as it is upon unimproved lands and under the immediate care and efficient control of the owner, or upon the public roads for travel or driving thereon under like care and control."

This animal was upon a public street; was being driven upon a public street. It was a question of fact whether it was under the immediate care and efficient control of the owner. The jury could well find from this record that it was under the efficient care and control of the owner. It certainly was under the care of the owner. The efficient control required is that which reasonably prudent and careful men exercise under like circumstances, under like conditions, and in respect to the same matter. There are degrees of efficiency. What might be efficient under one condition might not be efficient under another. It was for the jury to say, under the record here, whether or not this bull was, at the time of the injury, or immediately prior thereto, under the efficient control of its owner. The court submitted this question with proper instructions and with proper limitations, and we find no grounds for reversal here.

It is next contended that the court should have submitted special interrogatories to the jury.

These interrogatories, on close examination, called for answers to questions which must be answered in the general verdict. Under the instructions of the court, the ques-

tions submitted were essentially involved in the case, and must be answered by the general verdict. The court is not required to submit special interrogatories because of the mere asking. The interrogatories must involve some question which, answered affirmatively or negatively, is determinative of some ultimate fact involved in the right to recover. Matters which inhere in the verdict, which, under the direction of the court, must be found before a verdict can be returned, need not be split up into special interrogatories, and the jury required to find affirmatively on such special matters. None of these interrogatories asked, if answered, would have settled any ultimate fact involved in the issues. Some of the interrogatories asked involved findings upon matters which were not in dispute in this case. See *Van Horn v. Overman*, 75 Iowa 421, 425; *Whalen v. Chicago, R. I. & P. R. Co.*, 75 Iowa 563, 567; *Winter v. Central Iowa R. Co.*, 80 Iowa 443, 451; *Sutherland v. Standard Life and Acc. Co.*, 87 Iowa 505; *Cawker City St. Bank v. Jennings*, 89 Iowa 230, 236.

5. TRIAL: requested instructions: special interrogatories: ultimately determinative facts.

It is next contended that the court should have granted a new trial on the ground of newly discovered evidence.

The evidence claimed to have been newly discovered is purely cumulative. We doubt the sufficiency of the showing of diligence in discovering this evidence. But, passing that question, we doubt if it directly negatives any fact not already shown in the record. The conduct of the bull up to the time of and immediately preceding the accident is shown by these affidavits substantially as shown by the plaintiff's own testimony. We are not inclined to reverse on this ground.

6. NEW TRIAL: newly discovered evidence: cumulative evidence.

Upon reviewing the instructions asked by the defendants, we find that, in so far as they express correct rules of law, they were given by the court in its instructions sub-

mitted to the jury. The instructions given are a clear and full exposition of the law that governs the rights of these parties, and cover every phase of the controversy.

It is claimed that reversal should be had on the fact that the plaintiff claimed something for removing the bull from the ditch; that he removed it on the direction of the defendants, and incurred expense. The error is predicated on the thought that there is no evidence to support this claim; but we find that the record shows to the contrary, and we do not, therefore, give it any further consideration.

There are other matters complained of, which we do not deem of sufficient importance to require consideration.

On the whole record, we think there is no error of which defendants can complain. The cause was correctly submitted to the jury, and the verdict of the jury is binding on the defendants, and the judgment was rightly entered. The cause is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.